IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

01 AUG -9 AM 9: 42

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| CHARLES DAVENPORT, | } | |
| Plaintiff, | } | |
| v. | } | CASE NO. CV 00-B-2692-S |
| SERRA CHEVROLET, INC.; MIKE SPENCE, | } | ENTERED |
| Defendant. | } | AUG 9 2001 |

**MEMORANDUM OPINION**

This action is before the court on Defendant Serra Chevrolet, Inc.'s ("defendant" or "Serra") Motion to Compel Arbitration. Defendant moves the court to dismiss the action or, alternatively, to stay the action, and to compel arbitration. (Defendant Serra Chevrolet, Inc.'s Motion to Compel Arbitration.) Plaintiff Charles Davenport ("plaintiff" or "Davenport") filed suit against defendant, alleging that he suffered damages based upon defendant's alleged violations of the Credit Repair Organizations Act, 15 U.S.C. § 1679, *et seq* ("CROA"). (Plaintiff's Complaint ("Compl.") at ¶ 1.) Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion is due to be denied.

12

## I. FACTUAL AND PROCEDURAL SUMMARY

Plaintiff choose to purchase an automobile from defendant after allegedly receiving a notice from defendant informing him that he was pre-approved for financing on the purchase of a vehicle, that the dealership would have on-the-spot financing, that plaintiff's application would be approved, and that defendant would help rebuild his credit by selling him a car. (Compl. at ¶ 10.) Defendant and plaintiff negotiated the sale of a car. (Compl. at ¶ 8.)[1] Plaintiff took the car on a "spot delivery." (Pl.'s Brief at 15.) A "spot delivery" occurs when an automobile dealer allows a purchaser to take delivery of a vehicle pending, or conditioned upon, financing approval. *See Pescia v. Auburn Ford-Lincoln Mercury, Inc.*, 68 F. Supp. 2d 1269, 1277 (M.D. Ala. 1999). Defendant later repossessed the car purchased by plaintiff on the ground that no contract existed between the parties because financing could not be obtained for plaintiff. (Compl. at ¶ 14.) After plaintiff initiated this suit, defendant moved to dismiss, or in the alternative, stay the action and compel arbitration of plaintiff's claims.

## II. DISCUSSION

Plaintiff asserts three grounds on which they contend that defendant's Motion to Compel Arbitration is due to be denied. First, plaintiff contends that "the arbitration provision relied upon by the Defendant Serra [is] void and unenforceable as the Defendant has failed to comply with the Credit Repair Organization Act, 15 U.S.C. 1679 *et seq*." (Plaintiff's Brief in Opposition to Defendant Serra Chevrolet, Inc.'s Motion to Compel Arbitration ("Pl.'s Brief") at 2.) Second plaintiff contends that the "waiver of a jury trial represented by the Defendant's arbitration

---

[1] Plaintiff's complaint is misnumbered. The court will refer to the misnumbered paragraphs in this opinion.

provision is a violation of the [CROA] and is therefore unenforceable." (Pl.'s Brief at 2.) Third plaintiff contends that "[t]he 'Retail Buyers Order' and all of its terms [including the arbitration provision] are now void and unenforceable because the over-all transaction involved a situation known as a 'spot delivery' wherein the contract between the parties never came to fruition." (Pl.'s Brief at 15.)

    Plaintiff's first argument fails because it addresses the ultimate issue to be litigated. Plaintiff's claim that defendant's violations of the CROA render the arbitration provision void and unenforceable may be determined by an arbitrator.[2] Attacks on the contract as a whole, and not specific to the arbitration provision, may be submitted to arbitration. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) ("a federal court may consider only issues relating to the making and performance of the agreement to arbitrate"); *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 855 (11th Cir. 1992) ("This court also recognizes that the *Prima Paint* doctrine has been extended to require arbitration panels to decide many issues regarding the validity of a contract containing arbitration language - - including allegations that such contracts are voidable . . . ."); *Coleman v. Prudential Bache Securities, Inc.*, 802 F.2d 1350, 1352 (11th Cir. 1986) ("Claims alleging unconscionability, coercion, or confusion in signing the agreement generally should be determined by an arbitrator because those issues go to the formation of the entire contract rather than to the issue of misrepresentation in the signing of the

---

    [2] *See* 15 U.S.C. § 1679f(c) (Any contract that does not comply with the CROA is void and unenforceable.).

arbitration agreement.").[3]

Plaintiff's second argument, that the Retail Buyers Order is void because it conflicts with the CROA, is insufficient to defeat defendant's motion to compel arbitration even assuming plaintiff has a cause of action under the CROA. Nothing in the CROA indicates a congressional intent to preclude arbitration. *See Gilmer v. Interstate/ Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (Congressional intent to preclude arbitration must be "discoverable in the text of the [federal statute], its legislative history, or an 'inherent conflict' between arbitration and the [federal statute's] underlying purposes."); *see also Bowen v. First Family Financial Servs., Inc.*, 233 F.3d 1331, 1338 (11th Cir. 2000) (stating that "neither the text nor the legislative history of the TILA establishes that the plaintiffs have a non-waivable right to pursue a class action, or even to pursue an individual lawsuit, as distinguished from pursuing arbitration in order to obtain remedies for violations of the statute").

However, the court agrees with plaintiff's argument that the arbitration clause is unenforceable because the contract never came to fruition. The "Retail Buyers Order" provides:

> This order shall not become binding upon either the Purchaser or the
> Seller until the vehicle described above is physically delivered and Purchaser has

---

[3] The court recognizes that the Supreme Court of Alabama has held that "a trial court must determine the question whether a contract containing an arbitration agreement is void." *Alabama Catalog Sales v. Harris,* Nos. 1981594 & 198612, 2000 WL 1310579, at *2 (Ala. Sept. 15, 2000); *see A & B Check Cashing, Inc.,* Nos. 1990919, 1990951, 1990997, 2001 WL 410460, at *1 (Ala. April 20, 2001) (*Alabama Catalog Sales v. Harris* is the law of the state); *Money In a Flash Check Advance v. Wright,* Nos. 1991568 & 1991569, 2000 WL 1880330, at *1 (Ala. Dec. 29, 2000) (affirmed with no opinion citing to *Alabama Catalog Sales v. Harris*); *see also* F.M. Haston, III, *Arbitration in Alabama - - Of Road Signs and Reality,* 62 ALA. LAW. 63 (2001) (noting that at the time of publication, the Supreme Court of Alabama has released approximately eighty opinions on the subject of challenges to the formation and enforceability of arbitration agreements).

> received the Disclosures required under Federal Law, if applicable, in the case of a credit sale, the Seller shall not be obligated to sell until a finance source approves this Order and agrees to purchase a retail installment contract between the Purchaser and the Seller based on this Order.
>
> . . . .
>
> If the vehicle described on the front of this buyers order was purchased on an installment payment plan, this vehicle is being delivered **PENDING FINANCIAL APPROVAL** by lender or lenders as a convenience to the buyer or buyers, and is subject to all the terms and agreements of the said contract. The Seller has all the rights to the said vehicle until the loan term and conditions have been approved by the lender or lenders. Upon loan denial or condition approval to which the purchaser cannot conform to the condition. Purchaser(s) shall be liable for any damage, destruction, or abuse to the said vehicle until inspected by the Seller. Therefore, **I UNDERSTAND THAT THIS VEHICLE IS BEING DELIVERED SUBJECT TO FINANCIAL APPROVAL.**

(DX 1, Retail Buyers Order, Attached to the first Affidavit of Marty Brill executed on October 26, 2000.) (emphasis in original.)[4] Plaintiff cites two cases in support of his contention that defendant cannot now enforce the arbitration provision after plaintiff failed to obtain financing. In *Cobb v. Serra Toyota, Inc.*, 781 So. 2d 208, 211 (Ala. 2000), the Supreme Court of Alabama analyzed a similar situation involving a spot delivery and held that "[b]ecause neither the Lease Agreement nor the Retail Buyer's Order is a binding contract, [defendant] cannot enforce the arbitration provision it relies on." In *Ex parte Payne*, 741 So. 2d 398, 403 (Ala. 1999), the Supreme Court of Alabama, in analyzing a similar transaction, held that defendant could not "seek to enforce the arbitration provision in the Retail Purchase Order and, at the same time, claim that the Retail Purchase Order is not a binding contract."

---

[4] Defendant submitted several exhibits with its motion. The exhibits are referred to as "DX" followed by the corresponding number.

Defendant claims that this case is distinguishable from *Ex parte Cobb* and *Ex parte Payne* and is more analogous to *Dickinson v. Chris Myers Pontiac-Nissan-GMC, Inc.*, 711 So. 2d 984 (Ala. 1998). (Reply Brief in Support of Defendant Serra Chevrolet, Inc.'s Motion to Compel Arbitration ("Def.'s Reply Brief") at 7, 9.) Defendant contends that *Cobb* is distinguishable because the plaintiffs in *Cobb* attempted to lease a vehicle, and took possession pending financing approval of their lease. (Def.'s Reply Brief at 7); *See Ex parte Cobb*, 781 So. 2d at 209. In *Cobb* the plaintiff's vehicle was repossessed when they could not obtain financing. *See Cobb*, 781 So. 2d at 209. The plaintiffs in *Cobb* sued the dealer and the dealer moved to compel arbitration on the basis of an arbitration provision in the lease agreement. *See id.* Defendant argues that this case is "distinguishable from *Cobb* in that the arbitration agreement relied on by Serra in the present case is the arbitration agreement in the Retail Buyers Order, not the financing agreement." (Def.'s Reply Brief at 8.) However, the court is of the opinion that this case is not distinguishable from *Cobb* as the Alabama Supreme Court stated in *Cobb*, "[b]ecause neither the Lease Agreement *nor* the Retail Buyer's Order is a binding contract, Serra cannot enforce the arbitration provision it relies on." *See Cobb*, 781 So. 2d at 211 (emphasis added).[5]

Defendant also contends that this case is distinguishable from *Ex parte Payne* because the language of the "Retail Purchase Order" in *Payne* is different from the language of the "Retail Buyers Order" in the present case. (Def.'s Reply Brief at 8.) However, the court is of the opinion that *Payne* is not distinguishable, but stands for the proposition that because the

---

[5] As defendant correctly argues, the state court decisions on this issue are not binding on this court. Nevertheless, the court agrees with the *Cobb* decision and, therefore, follows it in this case.

plaintiff's credit application was not approved, "the condition precedent did not occur, and, by the express terms of the Retail Purchase Order, no binding contract was created." *See Ex parte Payne*, 741 So. 2d at 403.

The court also rejects defendant's assertion that the present case is more analogous to *Ex parte Dickinson*, 711 So. 2d 984 (Ala. 1998). (Def.'s Reply Brief at 9.) In *Dickinson*, the Retail Buyers Order contained a provision stating that the sale was contingent upon approval of the buyer's financing. *Dickinson*, 711 So. 2d at 987. Defendant cites the holding in *Dickinson* for the proposition that just as arbitration was compelled in *Dickinson*, it should also be compelled in the present case. (Def.'s Reply Brief at 10.) *Dickinson* held that "[t]he 'disputes' that have developed in this case are, therefore, precisely the sort of 'controversies' that contracting parties such as these would expect to 'arise between them' in regard to the right to possess and control a trade-in vehicle and in regard to the failure of the financing contingency." *Dickinson*, 711 So. 2d at 987.

In this case, plaintiff is arguing that defendant cannot enforce the arbitration clause because the financing contingency has failed and, thus, there is no binding contract. (Pl.'s Brief at 15.) In *Dickinson*, the issue before the court was whether "the arbitration clause [was] broad enough to encompass [plaintiffs'] claims alleging conversion of the [trade-in vehicle] and wrongful repossession of the [delivered car]." *Dickinson*, 711 So. 2d 987. The holding to which defendant cites does not address plaintiff's argument, but instead addresses whether plaintiff's claims in *Dickinson* were "within the scope of the arbitration clause in the Retail Buyer's Order." *Id.* Thus, this case is distinguishable.

The court concludes that, because the financing condition was not met, there is no

binding contract and defendant cannot enforce the arbitration provision.

## IV. CONCLUSION

The court is of the opinion that defendant's motion to dismiss the action or, alternatively, to stay the action, and to compel arbitration of the purported claims is due to be denied. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 8th day of August, 2001.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge